May it please the Court, Daniel Zip on behalf of the United States. Your Honors, I'd like to reserve two minutes of my time for rebuttal. The District Court in this case erred by allowing Mr. Viana to withdraw his plea after sentencing was complete. Under the plain language of Rule 11e, once the Court imposes sentence, a defendant may not withdraw a guilty plea. It's a complicated case and sensitive. Your notice of appeal was from the dismissal order. Yes. Okay. And you cited 3731 as authority to appeal in the notice of appeal. Correct. But on your brief, you're saying it's a 1291 appeal? I believe that's – And the two have sort of difficult interplay. Correct. So I assume it's – you've on further thought realized it's a 1291 appeal because the dismissal order was with prejudice. It was a final order. Yes. Okay. That's correct. Okay. This is just to clarify the government's position. So you're appealing the dismissal order, which is a final order, and the relief you're asking for is not the relief that was given in the Mandamus and Vineyard. You're asking for a remand for resentencing, not reinstituting the sentence. That's correct. And that was sensitive, and I appreciate that. Okay, so my focus has been on the dismissal order. Sure. And therefore, you're arguing – there are a host of different issues lurking in it, and district court dismissal authority is, again, important. Here it's late. Is your argument one of divestiture? Is your argument, no, acknowledging that district courts do have post-judgment and conviction authority to dismiss if there's outrageous conduct or under supervisory power? Under Ninth Circuit law, they have that authority, but it was abused here. What exactly is the government's argument? Our primary argument is that the district court abused its discretion in exercising its supervisory power in this case. That's what I thought. Okay, so this is a supervisory power, not a due process, outrageous dismissal. Well, we've made both arguments. You've acknowledged both lines of authority. I'm just trying to really isolate what we're focused on to seeing. So you're saying you construed this to have been a supervisory dismissal, and the error is it's an abuse because the court couldn't have done the premise, which was allowing the defendant to withdraw? The difficulty in this case is the court didn't explain what basis it was dismissing on. So in our briefs, what we've argued is if it was outrageous government conduct that was the basis, then that was an error. I don't want to take up too much of your time. But the reason it's important, obviously, dismissal authority at all stages is hugely important to district courts. I appreciate the government isn't arguing that 48B is the only authority, hence it was abused. But I really wanted to clarify, especially with relation to the Sumner decision, that you also aren't arguing that 3621 can never be reviewed, one, or that FRAP 4 was a block in terms of the timing and the district court lost all power. So you're accepting there is Ninth Circuit dismissal authority post-judgment, but you're just saying it was abused here. Is that fair to say? Yes, I believe that is fair. Whether it's outrageous government conduct on a due process standard or supervisory power. Right, but you aren't arguing divestiture. You're not making a jurisdictional argument, which would be very consequential. You're not saying the district court lacked authority to do the effort that it did. I mean, we have made the argument in our briefs. You've made that argument in your brief, that the court lacked authority to withdraw the plea, including under Baker, right? Right, and we're not abandoning that argument. Right, but if that were a valid argument, we wouldn't be reaching the rest. The district court lacked authority. That would be hugely consequential to district courts. And I'm not sure I'm convinced by that. Sumnerism is an expungement case. FRAP 4 does apply when there's a notice of appeal. The defendant didn't appeal here. Rule 36 allows district courts to take further actions after 14 days. But I think if we were to do sort of a sequencing, if you were pressing divestiture, we'd have to deal with that first. The relief would not be the remand for resentencing. It would be a dismissal altogether. The district court lacked authority to do what it did. So you can't really argue both. And I want to know what the – I don't think. So I did see your primary argument, one, that was preserving Ninth Circuit law. That's very important to district judges. And then if you agree with me, then continue. And you're saying there was an abuse and dismissal here because – and then your primary argument. Sure. Again, I think the law is clear that after judgment has entered, there are limits as to what a court can do with a judgment. It's limited to what's in Rule 35. And this court in Wheeler held that the court otherwise has no authority over the defendant once the sentence has been entered. But understanding your point, our goal here is to bring this back down for resentencing. And if that outcome requires sort of this court addressing the supervisory powers issue, then proceeding with that, the district court abused its discretion in this case by dismissing – Well, if we were to agree with you that the district court lacked authority to consider the motion to withdraw the plea, the remedy would not be resentencing but reinstatement of the original sentence. Right. And then presumably he would serve his time in either the Santa Ana Jail or the Imperial County Jail as the BOP designated. If the court went that route, we would be back to sort of what the original sentence was. On that issue, do you have a position on whether the rule is jurisdictional regarding the withdrawal of the – motion to withdraw the plea? On that issue, the court in King held that it is jurisdictional, which is separate from the question of whether the court had the authority to dismiss on the plea withdrawal. This court has held that it is a jurisdictional issue. In which case – I thought it was Baker that we held it was jurisdictional, but that was an old case predating the Supreme Court's more recent jurisprudence on claims processing versus jurisdictional rules. The case that we cited was King, which I believe was more recent. And it specifically said that the court lacked jurisdiction to withdraw. When the court allowed him to withdraw, you didn't seek mandamus, like as in Venuary. You waited for the dismissal, and then you noticed for appeal the dismissal. Why isn't our focus just on whether or not the dismissal was correct or not? The court – the district court in this case seemed to believe that withdrawing was a sort of predicate to dismissal. I'm not asking what the court believed. I'm asking what the government is appealing. We are appealing the ultimate dismissal. Yes. So even if – I guess if the district court erred in withdrawing and then dismissed, the withdrawal wouldn't affect the ultimate dismissal even if the court – Right, but as Judge Sung said, this is consequential because if we're reversing the dismissal, it goes back down. And if you're not asking to reinstate the sentence, I assume the defendant with new counsel in front of a new judge can move properly under Rule 11 to say I want to withdraw my plea because the lawful sentence of weekend custody isn't even available in San Diego. So in other words, he could move to withdraw his guilty plea because you're asking for a resentencing and then Rule 11 would allow him for good cause to withdraw, right? Yes. This court has broad authority to remand – No, you're asking for a resentencing. Correct. When a defendant faces sentencing, he can still move to withdraw his guilty plea. That's correct. Okay. For a fair and just reason. And wouldn't it be a fair and just reason that all of a sudden BOP says we actually can't accommodate a lawful sentence? Wouldn't that be probably a good cause? We don't agree that the BOP said it can't accommodate a lawful sentence. The BOP said it couldn't do it at the place where Judge Burns wanted him to be confined, right? That's correct. But didn't they offer, if I'm remembering correctly, one or two other alternatives but not close? Two alternatives, one in the Southern District of California, one in Orange County. But both within 500 miles. Both within 500 miles. The one in Santa Ana at sentencing, the defendant mentioned that he worked in Escondido, which is in sort of the northern end of the county. So the Santa Ana one was about 70 miles, I believe, from the person's work, and it's a 45-minute drive from Escondido to downtown. So these are all decisions within the discretion of the BOP, and both of those facilities were within 500 miles. So I don't think that it's fair to say that the BOP sort of thumbed its nose at the court and said we're not going to impose the sentence. It just had a disagreement over which facility was more appropriate. And going to the ‑‑ on the supervisory powers issue, ultimately the district court in this case abused its discretion in part because the Bureau of Prisons had nothing to do with the prosecution of this case. Cases where this court has affirmed the exercise of supervisory power generally involve actions on behalf of the prosecutor or things relating to the actual prosecution of the case itself. Here, this all occurred on the back end of the case. It had nothing to do with the validity of the charges, with the knowing voluntary plea. So it's fundamentally illogical for the court to punish the prosecutors for the actions of BOP of which they had no part. There was also sort of lesser alternatives that the court could have pursued, including simply agreeing with the designation of the BOP. Or throughout the hearings, there were multiple times where at the first hearing the BOP said you could order us to ‑‑ Could the district court have intervened at any point and said under Rule 36 there's an oversight here? Because I was unaware that he couldn't have very immediate to his family and job weekend confinement pursuant to a covation, so I'm going to revisit the sentence. Would Rule 36 have allowed this district judge, had the AUSA or anybody informed him, he still has authority to correct the sentence? Certainly at the first hearing, which occurred 14 days before. But that's Rule 35, is the 14‑day limit. 36 has no time limit. He could have corrected it at any point, couldn't he have? I believe that's correct, Your Honor. But just nobody, as far as I could tell, the AUSA and the defense attorney just receded and became the district judge with BOP. I'm not sure that the AUSA receded. The AUSA was not given a seat at the table in much of these arguments. It was primarily an argument between sort of a strong‑willed district court judge and a BOP representative who he disagreed with. Did both counsel in this adversary case agree that the district judge could speak to the director of BOP? Were they consulted in the record? Does it reflect?  We did not participate in that. That was sort of outside of the situation. I think he said he emailed her and then talked to her. I believe he set up a call and then she emailed afterwards sort of with an overview of what the discussion had been. I see I'm over time. We'll give you a minute for rebuttal. I do just have one question.  Before the district court, when the district court said they were going to entertain a motion to withdraw the plea, did the government specifically raise the rule prohibiting withdrawal of the plea at that point? We did not. It was always sort of a package, but we didn't specifically object to the withdrawal. Was never raised. Correct.  Thank you. Good morning. Todd Burns on behalf of Mr. Vianna. I'll start with the last question as far as contacting the director of the BOP. The district court said this is what I'm going to do next. No one objected to it beforehand. No one objected to it afterwards. So I don't see that the government can hang its hat on that, even though it's somewhat unusual. He telegraphed he was going to do it, and that's what he did. Coming then to the question that Judge Higginson, you started off with, my view, kind of the evolution of the government's position here is that in their opening brief, they said, oh, the district court just didn't have any jurisdiction to do anything. Then I filed the answering brief saying, well, of course the district court has ancillary jurisdiction to enforce its judgment. And then its position kind of moved, and they developed a lot of other positions. But if I'm focusing on the dismissal order, isn't dismissal here contrary to a host of rules, criminal rules? And I'm thinking 11E, of course, Rule 35, which if everyone knew the weekend thing wasn't available within 14 days, the defense counsel could have said we've got to come up with some other arrangement. The problem there, I think, is sort of the Bureau of Prisons kind of sucked the court into that hole. The judge was amazingly accommodating to the Bureau of Prisons here. There's this picture painted that he was a bully. What he actually said is to start with, I've done this three times in 21 years. I rarely do it because I know the Bureau of Prisons doesn't like it. It fits like a glove in this case. That's why I'm going to impose it. I'm going to give you six weeks, Bureau of Prisons, to get your ducks in a row. If there's a problem, come to me. The Bureau of Prisons came to him within a week. The judge said, you know, heard their reasons, said, look, those sound protectual to me. And the Bureau of Prisons lawyer at that point, George Cho, candidly said, look, we just the Bureau of Prisons doesn't want incidents. I'm sympathetic with a district judge who gives a lawful sentence and then later is told, not from the AUSA, we can't do it. We've come up with an – I'm sympathetic with that. On the other hand, why aren't you accepting the government's proposed relief here? They're offering you resentencing. Well, resentencing could lead to a greater sentence, right? You just heard the previous argument. Judge Burns is retired. We have a different judge now. It could be a greater sentence. But I think another problem, too, is it rewards the government for its intransigence. I'm sorry. What's the government's intransigence here? The statutes make it absolutely clear that the BOP has pretty close to unreviewable discretion, not subject to review by any court as to where to house a prisoner. So what is the intransigence other than BOP saying this interferes with our operation of the facility? We have a couple of places we can put him, but it doesn't work to put him in the place where Judge Burns wanted him. What's the intransigence? That's the central point of the dispute, which is they believe their trump card, which they came in with at three different hearings, was 3621B. But 3621B, clearly read in context, says that a sentence of imprisonment is not reviewable by a district court. This was not a sentence of imprisonment. It was a sentence of probation under a different chapter. And so 3621B does not apply to that. And the judge pointed out repeatedly to the government, he didn't point out that they're misreading the statute, but they should have briefed it and figured that out themselves. 3621 requires non-reviewability. The government's position would not be that we remand for resentencing, correct? No, we would be dismissing this case. We don't have authority to review it. Well, if you dismissed it, I don't know what happens with it then because it's a sentence. They're not willing to impose the sentence that the district court required, which is either the MCC or somewhere local. Now, what their two alternatives were was in Santa Ana, which on Friday afternoon traffic can take a couple hours, or out in Imperial Valley, which, again, could take an hour and a half or more. Are you familiar with any case which has said that it is up to the district court to decide where under 3563 that a defendant would serve nights, weekends, or other intervals of time, et cetera, that that's the district judge has the discretion to pick a place? I'm not aware of a case that specifically says that. Because that's certainly contrary. There's nothing in the statutes which say that, right? That's correct. But I think it's implicit in intermittent confinement that if you're going to put someone in custody for the weekend, that the Bureau of Prison doesn't have unlimited discretion to put them wherever. 500 miles, by the way, is not some sort of hard limit. That's aspirational. So according to the Bureau of Prisons, they could put them in Alaska, they could put them in Maine, and the defendant could do nothing about it, the district court could do nothing about it. Well, the district court could have changed his sentence. I mean, he didn't want to. He specifically said, I'm not going to do that. This is the sentence that I want to impose, and it has to be where I want it. Well, it's funny because the government argued strenuously in the opening brief that the district court couldn't change his sentence. So what the district court was trying to do was – Well, there were motions that could have been filed, right? I'm not sure what the mechanics are. I am quite sure that the district court has inherent authority, ancillary jurisdiction, to enforce its judgments. And that was what it was trying to do here. And it was being flexible. It said, look, as long as you put him somewhere local so that you're not sabotaging his sentence, that's okay with me. But where you're proposing putting him is too far away. And this is a guy who works as a truck driver. He works all day long. He comes home to see his daughter. He's a single father to his daughter. And the judge said, I want him to be able to come home, have dinner, say goodnight to his daughter, say goodbye for the weekend, check in at the jail at 8 o'clock. He said, that's just not practical. What about contempt? Why didn't the district court hold the government in contempt for not complying with the sentencing order? And I'm glad you asked that question because the government in its reply brief says, well, that wasn't – the judge wasn't realistically offering that, and the prosecutor didn't actually decline. And if you look at excerpts of record 19 to 21, the judge begins by saying, I don't want to be a bully about this. I've considered an order to show cause why somebody shouldn't be held in contempt. I think the best and probably the least offensive response to this is just to dismiss the case. Then the prosecutor says, but, you know, the GOP, the government is not a party to this case. The U.S. Attorney's Office is not a party to this case. And the judge says, well, they're part of the executive branch, and they're supposed to be carrying out – they're also a part of the Department of Justice. They're supposed to be carrying out the sentence. So I don't understand what your point is. What do we do about that? And the prosecutor says, well, dismissal is a severe remedy in the Ninth Circuit. It's how the court must consider certain other factors. The judge responds. I get it. I've thought it through, as I've said. Would you rather that I have an order to show cause why the warden shouldn't be held in contempt? I mean I really don't think – I mean how could the judge hold the warden in contempt? What would the warden be held in contempt for? Well, he then goes on to say I could call out the director of the Bureau of Prisons. And what would the director of the Bureau of Prisons be held in contempt for? For declining the judge's request in a telephone call? For refusing to execute the sentence. Did the sentence designate a place of confinement? Yes. The oral sentence controls and he designated the MCC. Then he said at the first hearing a week after the sentencing. I'm willing to be flexible about that as long as it's true. So your view is that a judge for intermittent confinement has the right to designate specifically where a prisoner will be held on weekends such that if the executive branch doesn't follow that, they can be held in contempt. Well, I wouldn't go so far as to say the judge has an absolute dictatorial right. Judges always are reviewable for abuse of discretion. That's running right into 3621. That was a recommendation. The JNC doesn't reiterate that. But he did have, to my eye, in mind, that this would be probation, as you said, home with family. So if he sends him to Alaska or BOP turns around up in Alaska and says we can't even let them out, that's disruptive. It's a safety issue. Then you've got the friction here. If he's stuck in jail, you've got habeas here. Tell me why you didn't file a Rule 36 motion. Well, I was in district court counsel. I got this pipe a year and a half after the notice of appeal was filed. Obviously, if BOP comes up with something that cannot accommodate a sentence that was lawfully given, you'd think you'd get back in for resentencing, and I've always thought Rule 36 is there for just that. But instead, we've got this world of contempt. But I think it's important to recall that the judge said it's not that they can't accommodate it. It's that they don't want to. It's a hassle to them. But they said safety issue. They couldn't have people coming in when the rest of the population was there permanently. And the judge said, look, the MCC is a jail. There are people coming in and going all the time. That's what usually happens in jail. But we can't second-guess BOP safety determinations. It seems like it just has to get back to the sentencing judge who now realizes he can't impose the sentence that Congress told him he could because of unfortunate BOP safety facts. But no one asked him to do that. It deteriorated quickly. To my eye, just as a statement, defense counsel in the AUSA is receded, and it became a real impasse between BOP and the judge. Well, I don't think it's exactly accurate to say that the prosecutor receded. As a matter of fact, the prosecutor emerged. At the first hearing, there was one BOP lawyer who said, canonally, we don't want to do this. May I ask one question? Of course. Because the divestiture issues are significant here because that would implicate Ninth Circuit district judge authority to dismiss prosecutions post J&C with prejudice if they have the authority. I read the government brief to acknowledge the case law that you're relying on that they do, but could you speak to the Sumner decision and whether there is divestiture once the FRAP 4 deadline is hit, and thereafter district courts have no authority even to use dismissal authority? Unfortunately, I'm sorry, I can't speak specifically to the Sumner decision, but it seems to me, and the government doesn't dispute, if the district court has ancillary jurisdiction to enforce its judgments, that that's a constitutional principle that trumps the federal rules of the appellate procedure. Thank you. I appreciate it. All right, thank you, counsel. Thank you. And we'll give you a minute. Thank you. Just briefly, the BOP has authority under 3621B to designate the location of an inmate's placement. The Supreme Court in Tapia has described that as plenary control, and in McCune recognizes that it goes to the core of the prison administrator's expertise. In this case, multiple BOP representatives explained to the district court why the unique facts of the MCC in San Diego made it not amenable to intermittent confinement and provided two alternatives. That was not the type of grossly outrageous conduct that would have warranted dismissal in this case. We'd ask that you remand for resentencing. Thank you. The case just argued is submitted, and with that we will move to the final case on the argument calendar today.
judges: Higginson, BENNETT, SUNG